UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARISE WALKER,

    Plaintiff,

v.                                                        Case No. 10-13696
                                                            Hon. Lawrence P. Zatkoff

MATTHEW SIMPSON, BRADY HARNER,
and BRIAN SAVARD.

        Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 17, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants Matthew Simpson and Brian Savard's Motion for Summary Judgment [dkt 14]. The Motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

**II. BACKGROUND**

This action involves the arrest of Plaintiff at NCG Cinemas in Grand Blanc, Michigan, on September 18, 2008. Plaintiff alleges that during the arrest Defendant Matthew Simpson, a Grand Blanc Township Police Sergeant, and Defendant Brian Savard, a Grand Blanc Township Officer,

used excessive force in violation of Plaintiff's Fourth Amendment rights.[1]  In response, Defendants assert that they are entitled to qualified immunity because Plaintiff's arrest was objectively reasonable.

On September 18, 2008, Plaintiff and his friend, Kim Abney, arrived at NCG Cinemas several hours before the start of a movie they intended to watch.  While in Plaintiff's car in the parking lot of the theater, Plaintiff and Abney split a double-shot of Bacardi rum, which Plaintiff had brought with him.  According to Plaintiff, he had consumed no alcohol prior to this.  Plaintiff and Abney then went inside the theater and purchased their tickets.  After waiting in line fifteen to twenty minutes, they returned to Plaintiff's car in the parking lot.  Several hours later, Plaintiff and Abney entered the inside of the theater before the movie was set to begin at 8:00 p.m.  They went to the restrooms.

Prior to Plaintiff and Abney entering the theater, Defendants Harner, Savard, and Simpson were dispatched to the theater regarding a reported domestic disturbance in the parking lot.  The report was made by Natalie Fournier, manager of NCG Cinemas.  Fournier testified that she was informed by three individuals that a male wearing a red shirt and black vest was fighting with a female in the parking lot.  Fournier called the police once Plaintiff, who was wearing a red shirt and black vest, entered the theater with Abney, informing the police that Plaintiff was acting belligerent.  Arriving at the parking lot and unable to locate an individual wearing a red shirt and black vest, Defendants entered the theater.

While Plaintiff was in the restroom, Defendant Simpson approached Abney.  Plaintiff testified that after he exited the restroom and walked around the theater, he observed Abney

---

[1] On June 21, 2011, the parties stipulated to dismissal of Defendant Brady Harner. [dkt 15].

speaking with Defendant Simpson and approached. Defendant Simpson informed Plaintiff and Abney that someone had made a complaint about a disturbance between a male and female. Plaintiff and Abney informed Defendant Simpson there must have been a mistake. According to Defendants, Plaintiff was "very loud" and "yelling" while he was speaking with Defendant Simpson. Defendant Simpson then told Plaintiff and Abney to leave the theater. Plaintiff testified that he was told not to return to the theater and to sit in his car for six hours while parked in the parking lot. Defendant Simpson gave Plaintiff this instruction since he believed Plaintiff was intoxicated and could not drive. Defendant Harner provided Abney a ride home.[2]

Approximately 15 minutes after Defendants left the theater, Plaintiff testified that he went back inside the theater to use the restroom. According to Plaintiff, he approached the concession stand to inquire as to the location of the restroom.[3] The theater employees then called the police again, and Defendants Simpson and Savard arrived at the theater. Defendants Simpson and Savard then confronted Plaintiff inside the theater. Defendant Simpson told Plaintiff that he was under arrest for trespassing. According to Plaintiff, he informed the officers he had to use the restroom; he, however, did not defy the officers and walked to the front door of the theater as ordered. Once outside of the theater, Plaintiff testified that Defendant Simpson placed him in handcuffs behind his body. Plaintiff then testified that he screamed in excruciating pain and "blanked" or "passed out" momentarily. Afterwards, Plaintiff remembers requesting medical attention. According to Plaintiff,

---

[2] Defendants were advised by police dispatch that an outstanding bench warrant from Iosco County, Michigan, existed for Plaintiff's arrest. Defendants, however, were informed by Iosco County that they would not pick up Plaintiff on the warrant. Defendants therefore did not arrest Plaintiff at this time.

[3] The Court notes that Plaintiff does not explain why he had to inquire as to the location of the restroom, when he had already used the restroom earlier in the night.

Defendant officers took him to the hospital in a police car, not an ambulance.

Defendants present a different version of the handcuffing. Defendant Simpson stated that Plaintiff was "making big arm movements" while standing at the concession stand, which Fournier's testimony supports. Defendant Simpson then placed Plaintiff under arrest inside the theater for trespassing. Defendants state that Plaintiff resisted arrest, which is also supported by the testimony of Fourner and Tim Dilts, a temporary manager for NCG Cinemas on duty that night. According to Defendant Simpson, he handcuffed one arm, but then Plaintiff swung away from Defendant Simpson. Defendant Simpson then grabbed Plaintiff's other arm so that he could apply the handcuff to Plaintiff's other arm. Plaintiff complained of pain in his shoulder, and Defendant Simpson re-handcuffed Plaintiff in front of his body once outside of the theater. Medical assistance was then called. Emergency medical technicians then transported Plaintiff by ambulance to the hospital.

Either by police car or by ambulance, the parties do not dispute that Plaintiff eventually arrived at the Genesys Hospital. According to Plaintiff, he was diagnosed with a shoulder injury and had to undergo rotator cuff surgery and rehabilitation therapy. On December 9, 2008, the trespassing charge was dismissed by the prosecutor.

On September 16, 2010, Plaintiff filed this action. The Court dismissed Plaintiff's state-law claims, leaving only a claim against Defendants for excessive force under 42 U.S.C. § 1983. Defendants filed the instant Motion for Summary Judgment on Plaintiff's remaining excessive force claim, arguing that they are entitled to qualified immunity.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986).

## IV.  ANALYSIS

To assert a claim under 42 U.S.C § 1983, a plaintiff must establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.  *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006); *see* 42 U.S.C § 1983 (providing relief for any citizen deprived of any rights secured by the United States Constitution against a person who acted under the "color of any statute, ordinance, regulation, custom, or usage, of any State.").  Only the first element is at issue, i.e., Plaintiff's claim that Defendants used excessive force in violation of his Fourth Amendment rights.

In claims of excessive force, the Sixth Circuit has established a two-step inquiry to decide whether a defendant is entitled to qualified immunity: (a) whether the facts construed in the light most favorable to the plaintiff would permit a reasonable juror to conclude that the defendant violated a constitutional right; and (b) whether the right was "clearly established" such that any reasonable officer would have known.  *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) (quoting *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010)); *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) ("[Q]ualified immunity in excessive force cases is a two-step analysis")).

**A.  CONSTITUTIONAL VIOLATION**

The Fourth Amendment protects individuals from the application of excessive force by law-enforcement personnel.  *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000).  The Court reviews claims of excessive force under a standard of reasonableness.  *Saucier v. Katz*, 533 U.S. 194, 209 (2001).  The standard of reasonableness is based on the use of force from the

perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* at 397. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Accordingly, "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Plaintiff argues that Defendants, specifically Defendant Simpson, used excessive force when handcuffing him because Plaintiff had no shoulder injury prior to the handcuffing, yet he suffered a shoulder injury after the handcuffing. Plaintiff concludes his resulting injury creates a genuine dispute of fact as to whether Defendants used excessive force.

Drawing all factual inferences in Plaintiff's favor, the Court finds that a reasonable jury could not conclude that Defendants used excessive force. Turning to the non-exhaustive *Graham* factors for assessing the reasonableness of the force used, Plaintiff's purported crime of trespassing is only minor, even knowing that an outstanding bench warrant existed for his arrest. Plaintiff also posed no threat to Defendants as he was not intoxicated and was complying with all of Defendants' commands. Similarly, Defendants do not claim that Plaintiff posed any threat to their safety, and Plaintiff was not resisting arrest.

7

While the non-exhaustive factors suggest that any excessive force would be unreasonable, Plaintiff has not identified what was allegedly done that constituted excessive force and, thus, has not identified an alleged constitutional violation. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (stating that "some factual basis for the claims under § 1983 must be set forth in the pleadings" and "mere conclusory allegations of unconstitutional conduct" are insufficient); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983) (stating that conclusory allegations are insufficient to show that a defendant deprived the plaintiff of any statutory or constitutional rights). Plaintiff's argument that he was handcuffed, suffered a shoulder injury as a result, and therefore Defendants must have used excessive force is insufficient.

The Court further notes that Plaintiff has not alleged or produced any evidence that Defendant Simpson applied any force to Plaintiff after he was handcuffed and neutralized. If such evidence existed, Defendants would not be entitled to qualified immunity. *See Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) ("[T]he use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."); *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (finding it objectively unreasonable for an officer to apply force on a suspect who was already neutralized due to the officer's application of pepper spray); *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) (stating that there is "simply no governmental interest in continuing to beat [a plaintiff] after he had been neutralized, nor could any reasonable officer have thought there was").

There is also no evidence, taking the facts in a light most favorable to Plaintiff, to indicate that Plaintiff was handcuffed too tight. *See Martin v. Heideman*, 106 F.3d 1308, 1312 (tight handcuffing can indicate excessive force). Furthermore, it is undisputed that after Plaintiff

8

complained regarding his shoulder pain, Defendant Simpson re-handcuffed Plaintiff in front of his body. *See Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (stating that for a handcuffing claim to survive summary judgment, a plaintiff must show that the defendant ignored the plaintiff's complaints that the handcuffs were too tight). Thus, Defendants were not ignoring Plaintiff's indication that pain resulted from Plaintiff being handcuffed behind his back.

Moreover, a reasonable law enforcement officer at the scene would have no reason to believe that grabbing Plaintiff's arms to handcuff Plaintiff behind his body was unreasonable force. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) ("An officer making an . . . arrest has 'the right to use some degree of physical coercion or threat thereof to effect."). Plaintiff makes no assertions that Defendant Simpson grabbed his arms with gratuitous force, and Defendants deny that Defendant Simpson applied any more force than was necessary to effectuate the arrest. Therefore, there is no evidence that Defendant Simpson applied any unnecessary force to effectuate the arrest, i.e., there is no evidence of gratuitous force. *See Baker*, 471 F.3d at 608 (the suspect has a clearly established right to be free from force beyond what is necessary to carry out the arrest); *Shreve*, 453 F.3d at 688 ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.").

Accordingly, for the reasons indicated, the Court finds under the totality of the circumstances that Defendants' actions were reasonable and there is no evidence of excessive force. *See Burchett*, 310 F.3d at 944 ("This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case."). Finding that Defendants' actions were reasonable, Defendants are entitled to qualified immunity.[4]

---

[4]The Court need not address whether the right to use excessive force was clearly established since Plaintiff has not shown a constitutional violation.

9

*Saucier*, 533 U.S. at 205. ("If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."). Accordingly, the Court grants summary judgment to Defendants on Plaintiff's sole remaining claim of excessive force.

## V.  CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Matthew Simpson and Brian Savard's Motion for Summary Judgment [dkt 14] is GRANTED and a judgment will enter accordingly.

IT IS SO ORDERED.

                              S/Lawrence P. Zatkoff
                              LAWRENCE P. ZATKOFF
                              UNITED STATES DISTRICT JUDGE

Dated:  January 17, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 17, 2012.

                              S/Marie E. Verlinde
                              Case Manager
                              (810) 984-3290